ACCEPTED
15-25-00035-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
5/27/2025 12:00 AM
CHRISTOPHER A. PRINE
CLERK

15-25-00035-CV

# Texas Fifteenth Court of Appeals

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
5/27/2025 12:00:00 AM
CHRISTOPHER A. PRINE
Clerk

Steven J Stringfellow
10160 Hwy 242
Ste 800-4117
Conroe, TX 77385-4379
(512) 571-2036
TheFederalExitParty@gmail.com

Texas Comptroller Judiciary Section
Asst. Atty. General Anthony Dolcefino
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1327
Anthony.Dolcefino@oag.texas.gov

<~v~>

## Appellant's Reply Brief

# 1. Table of Contents

1. Table of Contents.......................p.1

2. Index of Authorities...................p.2

3. Statement of the Case................p.3

4. Issues Presented........................p.3

4.1.       Jurisdictional Prerequisites Are Inapplicable to this Cause, Administrative Prerequisites Were So Attempted (p.3)

4.2.       Recession's Clause Places the Burden of Proof Directly Away from Appellee (p.5)

4.3.       Statutory Entitlement to Relief Was Indeed Established (p.6)

4.4.       Appellee's Arguments vs Claims to Sovereign Government Immunity are Contradictory (p.7)

4.5.       Sovereignty Has Made Legal Demand for Jurisprudence in This Case (p.8)

5. Statement of Facts......................p.8

6. Summary of the Argument........p.12

7. The Argument............................p.13

## 2. Index of Authorities

**I.** Article III Precedent Law for Civil Sovereign Immunity (recession's extenuation for secession's union in refederation ever higher under The Declaration of Independence and the 10th & 14th US Amendments) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p.(most of document)

**II.** Delegation of Federal Law in Texas Courts by Section 1 of Texas Consitution through the 9th/10th US Amendments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p.4, 25

**III.** Texas Civil Practice & Remedies Code Chapter 103 . . . . . . p.(most of document)

**VI.** Texas in Federal Rules of Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p.4, 25

**VI.** Texas Government Code Section 311.016 . . . . . . . . . . . . . . . . . . . . . . . . . . p.29

**VII.** Texas Rule 91. Special Exceptions . . . . . . . . . . . . . . p.3, 8, 14, 15, 16, 21, 28, 31

# 3. Statement of the Case

3.1.         Appellee has filed their response brief to Appellant's brief, to which this reply brief is being submitted.  Hencefrom Appellant's brief Appellee makes several arguments and assertions which may be replied against based upon sovereign logic as has been presented hitherto.  Appellant has also since filed a motion for special exception under Rule 91 as well as an amended exhibit, Exhibit P.4 (Amended). Recessions Clause, and a new exhibit, Exhibit P.8. Plaintiff's DPS Record.

# 4. Issues Presented

4.0.         Several issues exist with respect to the Appellee's argument infrom the Appellant's sovereign cause which this Court should consider for appeal.

    4.1.    **Jurisdictional Prerequisites Are Inapplicable to this Cause, Administrative Prerequisites Were So Attempted** - Appellee asserted that the courts do not have jurisdiction over this cause due to Section 103.051(e) stating that a claimant may seek mandamus relief only after the Comptroller denies an application which must be filed with the Texas Supreme Court.  That assertion would be paradoxical and so invalid toward this cause due to the fact that this case is for a tort claim centering around the allegation that the Comptroller Judiciary

section did not process the Appellant's application for compensation for wrongful imprisonment in the first place, which had been sent via postal mail within the correct stipulations for jurisdictional prerequisites under Chapter 103. Such insovereign legal argument was furthered by the Appellee by stating that the Appellant did not did not plead facts showing that the Comptroller issued a denial of his application (or ever received it), much less that we pursued any prerequisite administrative remedies. Appellee's argument is directly incorrect considering that the evidence was clearly in favor of the Appellant towards the Comptroller's Judiciary Section having not even processed the Appellee's application per Texas Rule in Federal Rules of Evidence (TxRE 401, FRE 301, 302, 401, 402, 404 by TX Const Sec 1, 9th/10th Amd), which should exempt the Appellant from any statutory argument asserting that the Comptroller must first deny applications before mandamus relief can be sought due to the fact that the application was apparently not processed according to law in the first place because the Appellee has produced no evidence rebutting that of Appellant's in-so-far, with that evidence proving that the Judiciary Section's office seemed to be having technical issues in recession in exhibits P.2 and P.4 which also should stand as the necessary perquisite administrative remedy contrary to Appellee's claim because the error surrounding the Comptroller Judiciary Section's email system was in-from an email sent to them by the Appellant attempting to properly exhaust administrative

remedy as pre-required by law.  Because the Appellee could not be properly contacted to exhaust such remedy and because sufficient evidence existed showing that further attempts would most likely result in further wasted process (exhibit P.4) the necessary complaint was filed under the extenuation, rendering Appellee's assertion as inapplicable.  (And the fact that prerequisite administrative remedies are implicit under constitutional law should uphold similar arguments herein being based upon same principle).

4.2.  **Recession's Clause Places the Burden of Proof Directly Away from Appellee** -  Even if the Comptroller Judiciary Section's email system had been functioning and they had been contacted and had refused to re-process Appellee's application, relief would still be requited from within the sovereign [civil] caveat due to recession's clause being a type of malfeasance which rules of evidence would apply to in favor of, implying that civilians within caveat be ruled toward against government in recession at least moreso under the hypocrisy, as shown by exhibit P.4 (Amended) and re-affirmed by exhibit P.6.  And as stated, recession's clause would uphold that the Judiciary Section were not functioning properly due to they not having processed Appellee's application after their email system had malfunctioned, implying that the courts did and do have jurisdiction, and with it being a wasted process to injunction for the Comptroller Judiciary Section to

retroactively process another application according to law due to the courts having the jurisdiction to order the necessary compensation in relief most directly. Sovereign immunity under the Article III precedent law demands that the law bend in favor of the caveat when and where ever possible, defaulting to civil immunity versus government immunity when the caveat is properly cited by civilians as it was in exhibit P.3, implying that the legal grounds being clung to by the Appellee must indeed be the cannibal clause as claimed due to sovereign immunity superseding normal code.

4.3.    **<u>Statutory Entitlement to Relief Was Indeed Established</u>** - The final set of arguments presented by the Appellee are just as inaccurate and otherwise extenuatingly oriented towards government away from civil sovereignty, with their Counsel actually improperly citing the law from Texas Civil Practice and Remedies Code Sec. 103.001(a), which in itself could've been seen as grounds to seek their disbarment.  Sections 103.001(a)(2)(B),(C) clearly state "....in accordance with a writ of habeas corpus..." and not "under" which was the term used by Appellee and not only would be illegal in general but also misleading towards this litigation and enough for appeal notwithstanding, if not suggesting ulteriorily that judgment itself be cannibalized in favor of relief.  Appellee also asserted that wrongful imprisonment may not apply to jail time for those

inordinately incarcerated due to Section 103.001(a)(1) use of the term "prison" which would be incoherent with sovereign federal constitution due to the fact that prison time would be the most tortious form of incarceration and so any type of incarceration thereunder may be interpreted in favor of civil plaintiffs, with civil sovereignty superseding government sovereignty, implying that the cannibal clause described by the Appellant would be the reason behind the Appellee's argument moreso, being tied to their assertion that the state courts do not have jurisdiction over such causes due to federal removal of those causes in federal recession (when total debt eclipses half of total assets) able to inure the caveat moreso.

4.4.   **<u>Appellee's Arguments vs Claims to Sovereign Government Immunity are Contradictory</u>** - The fact that Appellee claims sovereign immunity on one hand and then argues lack of jurisdiction and statutory entitlement on the other is completely contradictory and a sign of malfeasance, due to the empirical fact that immunity would necessarily exempt a party claiming it from a certain illegality, which is what the Appellee did, but yet on the other hand makes claims that there would be no malfeasance to be exempted from by asserting that the courts lacked jurisdiction from statutory requirements not being met in the first place...though

perhaps only as far as litigatory stuffing would be concerned (due from the mentioned cannibal clause).

4.5. **<u>Sovereignty Has Made Legal Demand for Jurisprudence in This Case</u>** - This cause may be seen as exceptional under superluminal consideration due to the prerequisite of the cannibal clause of federal recession to even be for itself, with the Appellee in dire need of emergency funding, upon special request from the sovereign Appellant whom the government would serve just as much as any other profession would their consumer, with a corresponding motion having been filed under Rule 91 (Motion for Special Exception), also supported by the overtly incorrect arguments and citations of the Appellee, which may be interpreted by jurisprudence as technically legal through consideration that such were ulteriorily supportive of extenuated granting of relief.

# 5. Statement of Facts

5.1. Since the facts leading up to the submission of the Appellant's brief the Appellee has filed their response brief which contains several points which litigate against the Appellant.

5.2. Appellee began their response's arguments by attempting to assert that jurisdictional prerequisites were not met by the Appellant in that the Comptroller

must first deny applications for compensation before judicial remedy may be sought, and that such never had occurred to wit and so therefore our cause lacked appeal. The further argument in section I of their response brief pertaining to jurisdiction argued that administrative prerequisites were also not remedied for. This section of Appellee's brief is referenced as an issue in 4.1 above in this reply.

5.3.                In section II, Appellee argues that Appellant failed to establish statutory entitlement to relief under Tex Civ Prac & Rem Code Chapter 103, with their interpretation of parts of 103.001(a) revolving around a modified term being used differently than what the actual law states in that section. Appellee uses the term "under" when the law states the "in accordance with." Appellee then volleys that because code in Ch 103 uses the term "prison" for codifying conditions qualifying as wrongful imprisonment the Appellee's claim to compensation for wrongful imprisonment in state jail would be invalid. This section's issues are referenced in 4.3 herein.

5.4.                Appellant's main contention continues with this reply, which centers around sovereign immunity and that whether or not the state's counsel is misinterpreting the law would be irrelevant due to there being a type of cannibal clause in federal recession which may allow state courts to rule against ostensible lawfulness due to the need to both remedy those not in caveat for progress' legality as well as further extenuate relief for those who are within by aggravating and compelling just causes to federal

court through the only type mechanism allowable--that regarding superluminal refederation via secessionary logic--being the caveat of jurisdiction of such sovereignty in recession's extenuation (meaning that the secession's advent would be the most ultimate goal, and with recession being used counter-intuitively to trigger it...in-turn suggesting that in certain cases wherein it may be shown that too much recession may be usurping its own designs that the courts may exercise jurisprudence by stinting relief).

5.5.            From the common facts, the legal violation that was originally charged to the Appellant was rescinded, with Appellant having been then charged with a different type of crime than the original from what the imprisonment in question was ordered for after being found innocent (at least moreso under preponderance), of which's definition exists as a separate type of offense in a different section of code that carries a much lesser sentence.  The fact that the Appellant was found innocent of the original crime would indicate an error in the indictment which prima facie is a tort that may be relieved according to the 5th and 9th Amendments under Section 1 Texas Constitution, which may be traced back to the witnesses who made statements in the police report who refused to participate in the prosecution of the trial commensurately, as it was claimed by the Appellant that those statements had been falsified in order to wrongfully imprison us.

5.6.            The issues surrounding the reasons behind the original altercation which impinged the wrongful imprisonment were allegedly tied to ongoing corruption

and crime relating to the dark net and government infiltration by such organized crime who had recessively singled out the Appellee most likely via an affiliate hacker clan who canvass the internet using online FPS gaming matches in order to determine the most likely candidates for law enforcement and other justice positions in youth before they mature enough to enter those fields, as so they then set about with subversive tactics using internet based crime bad hacking and other known techniques such as "sacking" (paying off/instructing corrupt individuals/officials to instigate altercations/falsify statements and reports in order to cause wrongful imprisonments) against those targets which then tie hand in hand to other corrupt tactics such as using affiliate corrupt mental health doctors to unjustly deem such targets as incompetent in order procure the mandatory commitments that result in revocations of 2nd Amendment rights which in-turn bar those just threats from being able to ever even become law enforcement officers, military, etc...whilst at the same time DNA of theirs left on bedsheets and laundry at the jails and hospitals can be illegally obtained for use in their child-trafficking black markets which usually compounds disenfranchisements as well as overall deteriorates society's mental health (with these more capable targets being society's more valued citizens) while exorbitantly increasing the profits and powers of these criminals who then use those funds and power to systematically obstruct further justice attempting to be sued for by these victims through bribes and access to their newborn traffick-children grown in the meantime in clandestine in-vitro labs with

surrogates likely in remote hidden bases and/or in third world countries, etc likely in conjunction with exotic tech, which may even be the actual end of a type of quantum warfare being conducted through quantum possession apparatus by other competing worlds now beyond us through federal metamorphosis via NBE tech that we have yet to classify, it is and was alleged.

## 6. Summary of the Argument

6.1.                    The total time served by the Appellant was over the maximum sentence for the adjudicated charge and so the excess time that was spent imprisoned in jail did and does not fall under any sort of code or tort otherwise under sovereign principle (as also outlined in exhibit P.3).  Appellant's appeal was based upon the simple logic that because excess time was endured against the law in tort at the least, which may also be accounted for/affirmed by code in Tex Civ Prac & Rem Code Ch 103, the courts have the responsibility to relieve that injustice either way, which may occur through Ch 103 though may also be rectified in tort, necessarily able to exempt arguments based upon Ch 103 requirements against relief at any level, and with recession's sovereign caveat being passed toward civil immunity for Appellant under the Article III precedent law (which gives favor toward sovereign immunity when and where the law shall be interpreted so).

# 7. The Argument

7.1.　　　　　For a state to declare sovereign immunity against its own code would be overtly illogical unto ridiculous, only justifiable under recession's clause toward secession's refederation, which would mean that the state could only do so against those not within caveat for civil immunity from stately recession.  But because recession is now federal, a type of cannibal clause would exist that could allow the courts to compel those matters to federal court for extenuate reliefs for those in caveat.

7.2.　　　　　No matter how post-logical the cannibal clause may be towards compelling the inurement of sovereign caveat in federal causes impelled by such counter-intuitive judgment against them, such clause may not function without fodder to consume in the first place as far as litigation would be concerned, and so a direct request was made by the Appellant in this case for the Bench to please exercise due jurisprudence and so award the relief requested so that the next iteration of secession's superluminal refederation may even come about, for it would be obvious that judging mechanically across the board with respect to the caveat federally unfederated could be unwise considering that there may have been areas of the law which may not have been aware of the extenuation at hand prior who may have violated the rights of sovereignty by not recognizing when and where such would not be appropriate which could in-theory have undercut the entire process and must be accounted for diligently, which would tend to be confirmed moreso by organic soventry declaring that they were not

expectant toward federal advent accordingly (per the motion for special exception).  The point of recession's extenuation is to inure the caveat by upholding sovereignty, which may be done via the cannibal clause evermore in empirical theory, though in cases where it may be seen that sovereignty had not been being perfectly respected by the state et al and obviously would have endangered these delicate high-stakes processes simply from affidavit of sovereignty, the state may be compelled to stint if such may be possible when especially requested.  Because there are several other ongoing cases with respect to similar claims as well as more to come and because the Appellee is low on funding and short on time, the caveat would be better supported into a federal circumstance via triageing with just one simple case such as this one being relieved at a state level, thereby satisfying the hypocrisy.  Just because secession's keel may allow us to tact into the wind and that federal recession may allow us to metaphorically foil for even greater speed, that does not mean that we should lock in such speed when and if we notice that perhaps our ship was not perfectly constructed, the water too rough our our course needing to be adjusted first, etc.  The sheer definition of the federal would be hypocritically violated if the law were not able to bend and flex with the implicit nature of recession's extenuation.

7.3.          Even though recession is necessary to cause secession notwithstanding, the public must still be able to function well enough to even be able to secede against recession for the superluminal refederation higher to be gained in the first

place, and to judge otherwise would be incompetent unto criminal. Just as much as someone without sovereign caveat may apply for a driver's license or a work visa and still obtain one, someone within caveat with a legitimate cause who has been improperly disenfranchised for whatever reason who has brought legitimate proof before a court may be judged in favor of if they so sovereignly request it when it may be seen that they are indigent in federal need as long as they have been pursuing federal direction otherwise, for common sense would show that secession's sovereignty must prevail even against itself, implying that in certain cases special exceptions may be made when and where appropriate which this case may be preponderated as for due to the clear and present evidence in favor of the Appellant against explicit code. In this cause such necessity may be seen as apparent due to the entire circumstance which had caused this wrongful imprisonment having been due to the State's poor oversight of the legal system, which only may be exonerated under recession's extenuation for secession...and so to hypocritically block attempts at that same cause by those succumbing to such detriment would be illogical and insovereign, because it has been shown that however counter-intuative such may be toward federal relief via, this case may be seen as a special exception due to natural shortcomings elsewhere, for not everyone had been perfectly aware of the extenuation upon the extenuation...and afterall federal form bears the shape of time in nature: past and future in present, matter and space in potential of spacetime.

7.4.	Though furthermore, Appellee's arguments and assertions in their response brief precisely confirm those of the Appellant's argued in our brief, in-turn upholding judgment in favor of our cause, however. If there were a case that could be spared for the sake of federal form, this one would be it...for federal form may apply both ways and also one or more in such fractal, in support of jurisprudence. That jurisprudence should see the depravity of the Appellee's arguments and spare the State such embarrassment if not prosecution in-from a federal setting less in line with caveat. Let us begin with the end of Appellant's response and work our way back through in order to better lend towards decisiveness under special exception.

7.5.	The final argument by the Appellee regards section 103.001(a)(1) which states "A person is entitled to compensation if: (1) the person has served in whole or in part a sentence in prison under the laws of this state; and...." Constitutional law would show us that stating "in prison or jail" instead of just "in prison" would be technically less than lawful due to it being well understood that prison is a more criminal type of incarceration than jail and with such a statement therefore being a waste of ink in time against higher deprivation to even code. One may argue that the law would have stated the term "incarceration" if indeed prison had implied any form of detention withunder, though such argument may be seen as less than federal due to the need for the law to flex with respect to sovereign immunity for secession's extenuation better for certain cases wherein plaintiffs are not in caveat for sovereign civil immunity, and using

the term incarceration could have been less conducive, supported by the fact that sovereignty is the highest extenuation in precedent of federal government (in that self-governance would be impossible without superluminal capability, as shown by exhibit P.3), which when combined with constitutional need to exploit such implicit nature would lend preponderance toward assuming that jail may be considered withunder prison moreso, which would tend to make even more sense when we imagine that undue jail time would indeed warrant some sort codification for compensation too.

7.6.         Having the code of the law written as implicit as possible is able to exploit the extenuation most expediently in order to bring about greater net constitution in the end.  Another example of such would be the lack of codification for intentional torts committed by government which allows arguments of sovereign immunity to prevail much more readily...or perhaps at the very least would lend much less towards vigilante retribution from recessive civilians being judged against outside of normalcy (which would be very obvious in this case too...for it would be much easier to have recession walk away fooled rather than incorrigibly believing they had been wronged by the law).

7.7.         Such assertion should be seen as moreso probable than not due to prima facie logic, e.g. a person who commits a felony who receives prison time will spend some of that time in jail before being transferred to prison, though their incarceration record will indicate the time they were imprisoned as being that spent in

jail combined with their time in prison, and usually with time served in pre-trial detention being added to the total.  The constitutional implication of the law combined with the superluminal efficacy of secession's union ever higher indelibly would indicate that the term "prison" would be used in conjunction with wrongful imprisonment moreso in code of law which should be able to be applied to incarcerations which occur in jail or mental health facilities though only when sovereign caveat is passed most primarily. And the latter would be so rare as to have lent towards confusion in Appellee's litigation which one might suspect, though only if one were not aware of the cannibal clause of federal recession which would tend to support ignoring sovereign caveat even so just the same in order to impel even higher reliefs in federal court, whilst also perhaps giving the states just cause to secede against federal government if and when those cases are judged against (if not for demonstration's purpose alone).  Finally, recession's clause places the burden of proof for such arguments firmly on the side of sovereign civilians away from government moreso, meaning that if it can be preponderated for the people it may...and with it very clear and present that uncontrolled generational recession would have compelled higher authorities to write the law's code to be as sharp as possible with respect aligning the caveat under such pressing extenuation, hence the term prison being used with jail more than likely being implicit, however elusive...and at least such could have occurred blindly from the entanglement as proven by exhibit P.3.

7.8.		The fact that the Attorney General's auspices have argued sovereign immunity in other cases against the Appellant, such as the case against DPS now being reviewed for writ of certiorari in the Supreme Court (Stringfellow v. TXDPS 15-24-00024-CV) would show that the Appellee would be both well-aware of sovereign immunity and also following the most ostensibly legal potential to wit.  The fact that our great Nation has arrived at this majestic point in socio-technological progress for federal advent through secession's metamorphosis should only support the state's verity all the more, with it being explicit that the state is the people moreso...and so the fact that this litigation from a civilian withof that would support both the Appellant and the Appellee (both the people and of the state) should be a clear sign to the Bench that the arguments herein are well and federally valid.

7.9.		Technically speaking, not a single case in a federal recession may fall under the jurisdiction of a state court for those within or without sovereign caveat (being the entire population) due to the former not being progressive and so at fault for causing their own recession unto themselves, and the latter for the reasons perscribed herein pertaining to federal removal.  From such fact, one may discount caselaw not explicitly citing sovereign immunity and so in-turn the cases cited by the Appellant wherein sovereign immunity was being asserted by the government against citizen parties not within caveat due to civil sovereignty superseding government sovereignty as in this case, with both categories covering all of the caselaw used by the Appellee (or any

caselaw otherwise not under this particular extenuation), the logic of which was explained in our brief.

7.10.          According to atomically sovereign federal logic, every point or citation used by the Appellee may be preponderated in favor of the Appellant as well, of course through the cannibal clause, though of which technically should be overruled in favor of the Appellant by jurisprudence in this case in favor of appeal due to extenuation within extenuation upon the extenuation under special exception considering natural human error and the lack of ability otherwise to account for such mistakes.  Though of furthermost concern should be the preservation of the state's reputation, for federal metamophosis is a civil process and so should be kept as such when and wherever possible...implying that cases wherein there could be violations of actual code, the cannibal clause could apply lesser due to the implicit nature of constitutional law being secession's keel's method of actuation, and so to apply it toward violations of code would tend to be cruder, if not for creating caselaw which could ruin the intelligent surprise for the next generation for being less aerodynamic.  Afterall, hypocrisy should still rule, and so why should not the state judge against itself in order to generate federal cases internally of its own in order to further sovereignty's progress towards federal refederation from secession's union?  A judge in this cause may see both an extenuating need for emergency funding to a sovereign civilian already with other more resonant cases and also the ability to create much needed friction within governmental operations

that is seemingly not present in order to encourage more proper federal momentum from the AG's office towards secession's advent, with both of those directions tending to support the caveat moreso than just yet another counter-intuitive ruling compelling yet another case of an indigent pro se litigant terribly short on time and funding thusly to yet another drawn-out monotlithic federal ordeal (with monolithic and federal being more of an oxymoron)...as if the Appellant had been fed too much at one time and could choke without proper federal jurisprudence.

7.11.         The litigation of the Appellee should be an extreme factor in such special extenuation, if not for ancient unspoken rules that could be seen as damning at a later date namely with respect to Appellee's use of the term "under" instead of transcribing code verbatim by perscribing "in accordance with" when referencing Tex Civ Prac & Rem Code 103.001(a)(2)(B),(C).  Such an error on behalf of the state no less should be otherwise seen as a federal violation of the law not exercising due care--so egregious as to not just warrant disbarment but also enough for the Bench to judge against if not for plausible deniability alone, for who would want to sign their name right under such an overt violation as if one were begging those reading to call the appropriate departments and make the appropriate complaints as well as inform the votership and rival parties.  As covered in the other filings, there may exist ulterior dimensions concerting with the law as would be proven by civil consideration of recession's paradox which posits that the necessary recession requited by at least the initial instance of

secession's demonstrative advent would occur entanglements untoward the population which could result in incidents perhaps less than civil which would in-turn requite and so legally suggest the involvement of higher civilizational technology in order for the process to remain purely civil in complete lawfulness via civil rule under God. Judgment against the caveat in such cases as these when there were overt, egregious violations by the law may be seen as opportunities for those perhaps working through us quantumally to be able to prove their existence in order to further processes due regarding their and our sovereignty, which could be at hand in this case as would tend to be the only other explanation.

7.12.　　　　　Such logic would be deductive, which may also be used to definitively object to the Appellant's other arguments which revolve around statutory entitlement per  Section 103.001(a).  The excerpt from that section has been provided below:

"Sec. 103.001. CLAIMANTS ENTITLED TO COMPENSATION AND HEALTH

BENEFITS COVERAGE.   (a) A person is entitled to compensation if:

(1) the person has served in whole or in part a sentence in

prison under the laws of this state; and

(2) the person:

(A) has received a full pardon on the basis of innocence for the crime for which the person was sentenced;

(B) has been granted relief in accordance with a writ of habeas corpus that is based on a court finding or determination that the person is actually innocent of the crime for which the person was sentenced; or

(C) has been granted relief in accordance with a writ of habeas corpus and:

(i) the state district court in which the charge against the person was pending has entered an order dismissing the charge; and

(ii) the district court's dismissal order is based on a motion to dismiss in which the state's attorney states that no credible evidence exists that inculpates the defendant and, either in the motion or in an affidavit, the state's attorney states that the state's attorney believes that the defendant is actually innocent of the crime for which the person was sentenced."

The fact that 103.001(a)(2)(B) & (C) both state different criteria for relief being granted in accordance with a writ of habeas corpus would deductively prove that an applicant does not necessarily have to be released from wrongful imprisonment due from their filing of a writ of habeas corpus as a direct result of it being processed, because such being done would only be able to occur in one circumstance, yet in (B) and (C) there are

two separate possible circumstances, implying that the use of "in accordance with" was codified in order to requite that a writ of habeas corpus would have had to at least have been filed by an applicant during their wrongful imprisonment.  The logic is very simple because an prisoner wrongfully imprisoned could have filed their writ of habeas corpus though in the meantime have been found innocent of the crime and/or have had their charges dismissed via a separate proceeding though still technically would be owed for the time spent wrongfully imprisoned after their habeas corpus was dismissed due to a lack of jurisdiction from their already having been released, as did occur to the Appellant (exhibit P.7).  The wording of Section 103.001(a)(2)(B),(C) is also very clear by the use of "a court finding" and especially within (C)(i) which states "the state district court in which the charge against the person was pending" because it would be impossible for that such court to render a dismissal if "in accordance with a writ of habeas corpus" implied an applicant being released under it due to the paradox--in that the charge would no longer be pending then.  Such logic would deduce irrevocably to the fact that a writ of habeas corpus having been filed and then an applicant having had their charges dismissed in the meantime would have to be a circumstance being covered by 103.001(a)(2), and one can see the same in (B), which could apply directly to a court's finding processing the writ of habeas corpus or another court processing a counter-suit claiming innocence when a habeas corpus had been filed elsewhere; and so would under civil preponderance via rules of evidence...which are the opposite of

criminal law, in that if it can be preponderated in favor of a plaintiff then it must, end of story.

7.13.        "These truths we hold to be self-evident" is the opening line of the Declaration of Independence and it is well understood that the deductive, implicit nature of constitutional law is inarguable due to its own lawfulness not violating itself by depraving us of the time wasted stating its obviousness.  Those who attempt to hide in these crevasses are arguably less than evolved and one day may find themselves as fodder for all we know.  Though anyone reading may see that the contortions of the State's Counsel would be extenuatingly sovereign, with their claim to sovereign immunity only justifiable by a coincidence that should be seen as perfectly explanatory as toward how the efficacy of federal law may re-affirm our own employees whilst also upholding the public most efficiently.  Tort claims are the bread and butter of personal injury suits based upon sovereign logic of constitution, which this case was filed as, though it was based off of Tex Civ Prac & Rem Code Ch 103.  The argument herein reasserts such tort claim by appealing to the fact that if criteria had been met for compensation under Ch 103 and it could be proven that Appellant's application had not been processed duly, which was proven so under US and Texas Rules of Evidence (with Sec 1 TX Const by the 9th/10th Amds implying that FRE Rule 301 be applied, though not necessarily needed under recession's clause by TxRE Rule 401) then relief would be requited if sovereignty was passed, which would be further supported by exhibit P.6

which consists of video evidence of government officials who had obviously been trained on sovereignty identifying material belonging to the Appellant regarding our website ExitFederal.org as being classified as sovereign [explicative].

7.14.        The evidence was and is very much in favor of the claim that the Appellant's application was not duly processed for some reason, a claim that must be taken as moreso true than not with respect to recession's malfeasance (exhibit P.4 (Amended) if and when sovereignty exists for the claimant, which was shown by exhibit P.3, with exhibit P.2 tending to affirm that such recession did occur on behalf of the Comptroller Judiciary Section as alleged, which in-turn would support relief at the very least at an amount equal to what would have been approved for by the Comptroller. Furthermore, a copy of the Appellant's DPS criminal history record has been filed as Exhibit P.8 which has no record of the conviction/adjudication in question because that charge was obviously entirely dropped from Appellant's record due to our having been found completely innocent entirely then, though even if the class A misdemeanor had still remained the Appellant should still be justly owed the difference between the time served for that charge and the maximum sentence for that class of charge (because we do not pay our government to make mistakes with our lives), which should be based upon the most pertinent code of the state's, being that in Ch 103, which was what was prayed for in the relief--all according to very well founded law that only prejudice or some other far out extenuation could deny.  Even further, the copy of our DPS criminal history

record chosen by the Appellant is from an exhibit in our case against DPS wherein our public record was tampered with by someone placing photos on it that were not in order with constitutional law due to a photo with temporary markings that was both outdated and perhaps illegible for law enforcement purposes being used as our main photo...much less with it being insovereign towards suggesting to recessive law enforcement and other officials moreso likely then to be confused that the Appellant were less than ostensibly lawful, being against the Article III precedent for sovereign immunity...and with that culprit even posting legible photographs that could have been used just to prove their point and also even modifying their posted dates inconsistently though in a way which would have proven to those questioning in that case, and in the public such as for background checks that the injuries in the photograph were not in conjunction with the assault charge from 2017 also pertinent to this cause which has since been removed--proving that there has been other fraud afoot with respect to the Appellant which may not be denied, upholding sovereignty hereof.  And even if the same bad-hackers who it is alleged unlawfully modified Appellant's DPS and TransUnion records in our other cases (exhibit P.5) had erased the misdemeanor charge in question via the all but purposefully weak ASCII standard such an occurrence would still support relief because it would show that the same culprits most likely caused my application for compensation to become obstructed too...though perhaps would support relief even moreso considering that weaknesses on behalf of the state were and are present, just as DOGE is uncovering

trillions of dollars worth. That a sovereign citizen could be presenting a solid case made even more hardcore by the removal of the record of the adjudicated charge relating to this issue by a clandestine team of bad-hackers would be perhaps the most ulterior reason to grant extenuated relief as fast as possible, especially if such a litigant were low on funds and also prosecuting other more advanced cases elsewhere against such criminals directly and also recession in general, if not also spearheading a commensurate political party to wit, if not being for federal advent itself. In fact, judging against such a civilian could be seen as indicative of criminal liaisons perhaps in some respect, especially under the shadows of recession's clause...or perhaps even suggestive of quantum possession by some sort of weaponry's apparatus from another world not our own from another dimension of technology we have yet to grasp, much like Natives on our world saw sails on the horizon not knowing what they were before they died from plagues...with there being mental health issues ripping through our society which could be traced back to demonic entities perhaps being automated by such class of quantum tech.

7.15.         With that being said, the State's counsel's only claim to sovereignty may be through the Court's judgment in favor of relief due to their own overt error in transcribing Section 103.001(a) by using the term "under" as covered. Such an immense error should only be interpreted in a legal sense as having been toward compelling the Bench to rule in favor of relief under special exception in this cause due to there being

no other way to express such legitimate intent withunder the federal cannibal clause whilst still needing to recognize the further extenuation at the same time while adhering to laws preventing advising of the public.  The Court would have little other option than to allow this appeal to be judged in favor of the Appellant due to the implication of such error being able to be seen as perhaps the only way that the Appellee could be seen as oddly lawful under three extenuations at the same time, which may be affirmed by their assertion that jail time would not qualify under the term prison, which would be technical towards constitutional implication by the necessitation of sovereign caveat's better alignment, and with it being obvious that Appellee's Counsel would have argued that the state would have used the term "incarceration" if they had specifically meant for jail time to be included.  Because the use of the term prison is more implicit for sovereignty's ends and because the Appellee does not argue with respect to the term incarceration and also overtly, improperly and egregiously transcribes the cited code from Sec 103.001(a)(2) in a manner otherwise strikingly odd for such a higher professional, such could be interpreted as their actually being in favor of relief being granted in the only way professionally acceptable due to the other pole of the possibility being judgment in favor of a serious legal offense by the state against a sovereign civilian via such incorrect quotation of code, which would simply not be acceptable without, implying at least moreso that relief be granted duly under civil rule in preponderance.

7.16.         At the very least though the Court may recount that this cause is a tort claim at its core being based off of Ch 103 which the state may either choose to process as such or choose to have processed under Ch 103, whichever is more becoming, with the latter perhaps able to be seen as more legitimate...for how could the Comptroller deny an application that they had never processed?  If the Appellant's argument is upheld in the respect that compensation be granted for wrongful imprisonment from prison and not jail time, then one would also be left with the assumption that compensation for wrongful imprisonment regarding undue jail time would have to be pursued via tort claim, which this cause would stand as as well.  Therefore, whether or not criteria were met for Chapter 103 would not necessarily the crux of this cause being relieved due to the fact that there was excess time spent in incarceration that was not within the bounds of the law and so the courts have the duty to relieve that injustice in favor of the people under the Constitution of Texas in the US in some way somehow, such would be well understood...though the arguments and evidence that would show that even so the Appellant's application should and may be processed under Ch 103 should stand as mere stout affirmation that relief would indeed still be due notwithstanding.  And so the issue would come down to a question of sovereign immunity--being the only legal extenuation able to overrule normal constitutional efficiency superluminally, in that would the Appellant be immune from recession?

7.17.		Sovereign caveat was shown to be within the Appellant by exhibit P.3, and with sovereign immunity being waived due to the statutory language of the law clearly defaulting toward civil sovereign immunity versus government sovereign immunity per the 9th/10th Amd.  The fact that notice of intent to file a complaint was sent to the Comptroller Judiciary Section via email and that that email was returned undeliverable two separate times from two different addresses from two separate email providers should be the type of coincidental proof made for Hollywood that just cannot be denied.  A civil court may defer to sovereign civilians in recession when they present proof, with recession standing as such quantumally moreso at any and every positive rate in time's motion, though even so the Appellant furnished proof of the further arguable shortcoming in exhibit P.2 albeit directly relating to the obstruction of proper prerequisites being satisfied, and of which the same chapter of Government Code would support interpenetration of in favor of Appellant, being Section 311.016, e.g. "may"...in coincidental support again.  Because the people would be more sovereign than their government of whom they employ, sovereign civil immunity waives sovereign government immunity when a violation of law has occurred to those civilian plaintiffs versus their government (discounting ministerial and discretionary immunity which may not apply to this case).  Therefore, relief may be granted for this cause in this appeal, with reason to override the cannibal clause having been expressed under special exception.

I, Plaintiff Steven J Stringfellow, hereby certify that all of the foregoing is true and correct under penalty of law.

**Federally Submitted,**

_____ Dated: ___05/26/2025___

Steven J Stringfellow
10160 Hwy 242
Ste 800-4117
Conroe, TX 77385-4379
(512) 571-2036
thefederalexitparty@gmail.com

-------------------------------------------------------------------------------------------------------------------------

# Certificate of Service
_____

I certify that a copy hereof has been furnished towards:

Texas Comptroller Judiciary Section
111 E. 17th St.
Austin, TX 78711
(512) 936-5985
Adam.Fellows@cpa.texas.gov
Elena.Bendea@cpa.texas.gov

Texas Office of the Attorney General
300 W. 15th Street
Austin, TX 78701
(512) 463-2100
Anthony.Dolcefino@oag.texas.gov
Sarah.Orr@oag.texas.gov

Return service to:

Steven J Stringfellow
10160 Hwy 242
Ste 800-4117
Conroe, TX 77385-4379
(512) 571-2036
thefederalexitparty@gmail.com

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 101252156
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: Appellant's Reply Brief
Status as of 5/27/2025 7:41 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Sarah Orr | | Sarah.Orr@oag.texas.gov | 5/26/2025 10:22:02 PM | SENT |
| Atty General | | Anthony.Dolcefino@oag.texas.gov | 5/26/2025 10:22:02 PM | SENT |